## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| R.A. and M.A, individually and on behalf of M.A., a minor,<br><br>      Plaintiffs,<br><br>      v.<br><br>STATE OF CONNECTICUT DEPARTMENT OF EDUCATION and RUTH SIMONCELLI,<br><br>      Defendants. | No. 3:16-cv-1215 (MPS) |

## RULING ON MOTIONS

This action arises from the decision to deny a disabled student admission to the Oliver Wolcott Technical High School, which is a part of the Connecticut Technical High School System administered by the State of Connecticut Department of Education.  The student's parents ("Plaintiffs") claim that the denial violated the student's rights under § 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794 ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and seek a preliminary injunction requiring the Defendants to admit the student to the high school.  (ECF No. 2.)

The Defendants have moved to dismiss, contending that the Court lacks subject matter jurisdiction because the Plaintiffs failed to exhaust administrative remedies.  The Court held a hearing on August 24, 2016, at which it heard evidence on the Plaintiffs' Motion for Preliminary Injunction and argument on the Defendant's Motion to Dismiss.  At the conclusion of the hearing, I stated that I was uncertain about whether the Court had jurisdiction and ordered the Plaintiffs to provide further information related to this issue.  I also stated that, if I concluded that the Court had jurisdiction, I would deny the Motion for Preliminary Injunction.  This ruling supplements my remarks at the hearing.

I now conclude that Plaintiffs' Section 504 and ADA claims are subject to the exhaustion requirement of the Individuals with Disabilities Education Act, 20 U.S.C.A. §§ 1400, *et seq* ("IDEA"), and thus that under Second Circuit precedent the Court does not have subject matter jurisdiction.[1]  The application of the IDEA and its exhaustion requirement to the sequence of events in this case, however, raises a novel issue:  Do a student and his parents have to exhaust remedies under the IDEA when they file suit after the student became IDEA eligible, but their suit challenges a decision made by school authorities before the student became IDEA eligible?  I answer this question affirmatively and thus GRANT the Motion to Dismiss.  Because existing Second Circuit case law does not address this issue, I also indicate how I would rule on the merits of the Motion for Preliminary Injunction in the event I am incorrect about the jurisdictional issue.  In the event that the Court does have jurisdiction, the Motion would be denied because the Plaintiffs have failed to show sufficiently serious questions going to the merits.  Based on the submissions of the parties and the evidence introduced at the August 24 hearing, I make the following findings of fact and conclusions of law.

## I.    Findings of Fact[2]

### A.   The Connecticut Technical High School System

The Connecticut Technical High School System ("CTHSS"), a division of the Defendant Connecticut Department of Education, runs the Oliver Wolcott Technical High School in Torrington, Connecticut ("OWTHS").  Defendant Ruth Simoncelli is the director of admissions at OWTHS.  OWTHS has a different curriculum than a general comprehensive high school.  In

---

[1] In light of my conclusion and in light of the fact that the Plaintiffs have named a state official in addition to a state agency as defendants, I do not address whether the Eleventh Amendment would bar the Court from asserting jurisdiction over the state agency defendant.

[2] To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice-versa.

particular, OWTHS has a dual curriculum, where the instructional cycles alternate between academic curriculum and technology curriculum.  (Exhibit 10.)    While comprehensive high schools cover academic curriculum in 180 days over two semesters, technical high schools, including OWTHS, cover academic curriculum in 90 days.  (*Id.*)  The other 90 days are spent on technology curriculum.  (*Id.*)

In addition, unlike general comprehensive high schools, which have open enrollment, technical high schools in Connecticut have a competitive admissions process.  There are two phases in this process.  (Exhibit 11.)  In the first phase, the applicants fill out a written application and are assigned points based on grades and other information submitted.  (*Id.*)  The applicants are then ranked, and those who do not meet the admissions criteria are added to a waitlist.  (*Id.*)  Once an applicant passes the first step, technical high schools ask for additional records, including any 504 Plans and Individualized Education Plans ("IEPs").[3]  (*Id.*)  Once those records are received by the technical high school, a Planning and Placement Team Meeting ("PPT") or 504 meeting is convened to determine what accommodations the student will need.[4]  (*Id.*)  In some circumstances, this "meeting may determine that the CTHSS is not an appropriate placement for a student to

---

[3] Schools are required under Section 504 and the IDEA to find and evaluate students for special education needs. Schools are required to provide 504 plans to students classified as disabled under Section 504 of the Rehabilitation Act and to provide IEPs to students classified as disabled under the IDEA.  The two statutes define disabled children differently:  the Rehabilitation Act defines "handicapped persons" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."  34 C.F.R. § 104.3.  The IDEA defines "child with a disability as "a child (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as 'emotional disturbance'), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services."  20 U.S.C. § 1401. Therefore, some children who qualify for a 504 plan may not qualify for an IEP, and vice versa.  *B.C. v. Mount Vernon Sch. Dist.*, 2016 WL 4926147, at *5 (2d Cir. Sept. 16, 2016) ("Plaintiffs' statistical evidence, therefore, shows disparate impact under the ADA and Section 504 only if, as a matter of law, a child with a disability under the IDEA necessarily qualifies as an individual with a disability under the ADA and Section 504, such that Plaintiffs' data on children with a disability under the IDEA suffice as data on individuals with a disability under the ADA and Section 504. We conclude that this is not the case.")

[4] PPT meetings are convened when a student is classified under the IDEA and has an IEP.  504 meetings are convened for a student who is classified under Section 504 and has a 504 Plan.

receive a free and appropriate education." (Exhibit 2.)  Students with disabilities are routinely admitted to OWTHS and are accommodated with 504 Plans and IEPs. (Uncontroverted Facts, ECF No. 39 at ¶ 1.)

### B.   M.A.'s Application to OWTHS

M.A. (the "student") is a fourteen year old who was due to enter high school in the 2016-2017 school year. (ECF No. 39 at ¶ 1.)  The 2016-2017 school year began on August 29, 2016. (Second Am. Compl., ECF No. 27 at ¶ 13.)  Plaintiff R.A. is the student's father and Plaintiff M.A. is the student's mother. (ECF No. 39 at ¶ 2, 3.)

The student has been diagnosed with anxiety. (ECF No. 39 at ¶ 12.)  The parties agree that his anxiety is a "physical or mental impairment that substantially limits one or more major life activities." (*Id.*)  At the end of his 7th grade year at the Gilbert School, a combined middle and high school in Winsted, Connecticut, the student came home from school extremely upset after watching a video about ISIS in social studies class.  After that point, the student refused to return to the Gilbert School.  The student was diagnosed with anxiety and panic disorder and was treated by three doctors. (Exhibits 5, 7, 8.)  Each doctor wrote a note stating that the student was diagnosed with anxiety and could not attend school as a result. (*Id.*)  The notes were delivered to the Gilbert School.  The last note and update that the Gilbert School received was dated December 12, 2015. (Exhibit 8.)

In response to these notes, the Gilbert School developed a 504 plan for the student, which provided that he would receive homebound tutoring until further notice. (Exhibit 4.)  In February of 2016 the Gilbert School convened a PPT meeting, at which Gilbert School officials determined that he was not a student with a disability under the IDEA.  *See* note 3, *supra*.  The Gilbert School

accordingly declined to create an IEP for him.  (Exhibit 4.)  The student did not attend the Gilbert

School and received homebound instruction during his 8th grade year.  (*Id.*)

In November 2015, the student applied for admission to the OWTHS.  (ECF No. 39 at ¶

10.)  With the application, the Plaintiffs executed a release of records from the Gilbert School,

which would include, if applicable to the student, "documents including course grades, discipline

records, test results, 504 plans, IEP and/or PPT records, psychological reports, attendance records,

health records, and records of extracurricular activities."  (Exhibit 3.)

On January 26, 2016, Plaintiffs were notified by OWTHS that the student had successfully

completed the "first step in the application process."   (Exhibits 2, 3.)   The first step in the

admissions process involved an analysis of the student's grades only.  (*Id.*)  The letter stated that

the "continuation of the application process is predicated upon" a variety of things, including the

"convening of a PPT/504 meeting (where applicable)."  (*Id.*)  Plaintiffs were invited to a 504

meeting at OWTHS on April 19, 2016.  (Exhibits 14, 15.)  Plaintiffs were told that the "IICAPS

team" the student was working with was welcome to attend as well.[5]  (Exhibit 14.)  OWTHS also

invited representatives from the Gilbert School to the meeting.  (Exhibit 21.)  A representative of

the Gilbert School responded that she would try to attend, but OWTHS never received any further

communication from the Gilbert School with regard to the meeting, and no one from the Gilbert

School attended.  (*Id.*)  The purpose of the meeting was to discuss accommodations the student

would need to attend OWTHS.  (*Id.*)  Before the meeting, representatives from OWTHS asked

Plaintiffs to provide "copies of the psychiatric evaluation that was done and their treatment plan

---

[5] IICAPS (Intense In-Home Child and Adolescent Psychiatric Services) is an agency that is a part of the State of Connecticut's Family and Children's Aid Program.  Counselors with IICAPS work with families and children with emotional problems.  *See* CONN. DEP'T OF CHILDREN AND FAMILIES, *Intensive In-Home Services*, http://www.ct.gov/dcf/cwp/view.asp?a=2558&q=314366#Intensive_In-Home_Child_and_Adolescent_Psychiatric_Services_(IICAPS) (last visited Sept. 1, 2016).  The Gilbert School referred the student to IICAPS in March of 2016, after which the student worked with Sarah Rosetti, one of the program's counselors, twice a week.

for" the student.  (Exhibits 14, 22.)  The Plaintiffs did not provide any new information about the student, and because the IICAPS team had only recently begun work with the student, they could not provide any information.  At the meeting, the student's mother reported that little had changed with respect to the student's anxiety and diagnosis.  The only records that Defendants received were the school and medical records provided by the Gilbert School, including the last doctor's note in the file from December 2015.

At the meeting, the 504 Team[6], including Defendant Simoncelli, determined that the student would not be admitted to OWTHS for the 2016-2017 school year.  (Exhibit 15.)  Initially, the 504 team discussed possible accommodations for the student, such as different reading materials.  After more discussion, however, the team determined that based on the student's "identified 504 needs and required programming, CTHSS [was] not able to meet his educational needs."  (*Id.*)  In particular, OWTHS noted that it could not provide the home tutoring that the student was currently receiving as part of his 504 plan.  (*Id.*)  At the evidentiary hearing, Defendant Simoncelli testified that OWTHS has never made the accommodations that the student required, namely homebound instruction, for any other student.  After the meeting, OWTHS told the student's mother that to be admitted in the future, the student would have to "demonstrate documented ability to successfully participate in a general education school/classroom environment."  (*Id.*)  After the meeting, the student's mother followed up with the Connecticut Technical High School System.  Carrie Leib, an educational consultant for the System, reiterated that OWTHS would have to see regular attendance in a general education system, and that the

---

[6] The 504 Team consisted of Defendant Ruth Simoncelli and other representatives from OWTHS, which, as noted, is part of the Connecticut Department of Education.  *See* OLIVER WOLCOTT TECHNICAL HIGH SCHOOL, https://wolcott.cttech.org/.

student was welcome to reapply once that was shown.  (Exhibit 16.)  There was no further communication between Plaintiffs and OWTHS.

**II.      Procedural History**

Plaintiffs filed a complaint along with a Motion for Preliminary Injunction on July 20, 2016.  (ECF No. 1, 2.)  The initial complaint named only the State of Connecticut Department of Education.  (ECF No. 1.)  In response to the Court's Order to Show Cause why the case should not be dismissed on Eleventh Amendment grounds (ECF No. 14), the Plaintiffs filed a First Amended Complaint, which added as defendants two Connecticut Technical High School System educational consultants.  After an in-court status conference on August 5, 2016, the Plaintiffs filed a Second Amended Complaint, removing the two educational consultants and adding as a defendant Ruth Simoncelli.

At the August status conference, I raised and directed the parties to brief the issue of whether Plaintiffs' claims were subject to the exhaustion requirement under the IDEA.  (ECF No. 25.)

On August 10, 2016, Defendants filed a Motion to Dismiss for Lack of Jurisdiction on the ground that the Plaintiffs had failed to exhaust administrative remedies under the IDEA.  (ECF No. 29.)  In addition to responding to the Motion, Plaintiffs submitted their Second Amended Complaint, in which they "ma[de] or revise[d] certain factual allegations to make clear that at all relevant times that the student was not disabled pursuant to the Individuals with Disabilities Education Act, and, therefore, the IDEA's policy to exhaust prior to the commencement of litigation should not apply."  (Mot. to Amend, ECF No. 26 at 2.)  Plaintiffs alleged that "[a]t all times relevant herein, the student was not identified as a child with a disability pursuant to" the IDEA.  (ECF No. 27 at ¶ 16.)

In response to an Order directing the parties to file on the docket any notice in their possession that was given to the Plaintiffs about their rights under the IDEA (ECF No. 38), the Defendants filed a statement that they had no such documents.  (ECF Nos. 40, 41.)  The student's mother filed an affidavit stating only that she was not provided notice of the IDEA's procedural safeguards in advance of the April 19th meeting, which as noted, was a 504 meeting.  (ECF No. 41 at ¶ 3.)

At the August 24 hearing on the Motion for Preliminary Injunction, however, M.A., the student's mother, testified that the student had in fact been classified as a child with a disability under the IDEA at a July 2016 PPT meeting with the Gilbert School.  Based on this new information, I ordered the Plaintiffs to provide "all documents that they received at the July meeting with the Gilbert School, and any documents received thereafter or before that concern the July PPT meeting or [the student's] designation as a child with a disability under the IDEA."  (ECF No. 43.)  The Plaintiffs complied with the order and hand-delivered to chambers on August 25, 2016 the student's IEP records from April, May, and July (ECF No. 45), a psychological evaluation by Michelle Quattrone of the Winchester Public Schools, prepared on May 20, 2016 (ECF No. 44 at 5), and a psychiatric report prepared by Alicia Carmona, M.D., prepared June 14, 2016.  (*Id.* at 12.)  These documents show that the student was classified as a child with a disability under the IDEA under the "Other Health Impairment" category on July 12, 2016.  The documents also reveal that Plaintiffs were pursuing an IDEA classification for their child starting in February 2016 and continuing up until the student was ultimately identified as a child with a disability under the IDEA on July 12, 2016.  (*See* ECF No. 45.)  In April, the Plaintiffs returned to the Gilbert School administrators and requested that the student be reevaluated.  The Gilbert School complied, but in May determined again that the student was not a child with a disability under the IDEA.  The

Plaintiffs again requested that the student be reevaluated by an independent psychiatrist.  The Gilbert School again complied, and after the student met with the independent psychiatrist, he was determined to be a child with a disability under the IDEA in July.

In light of the student's classification under the IDEA, the Gilbert School created an IEP for the student.  The new IEP no longer mandates that the student receive homebound instruction, but rather sets goals to reintegrate the student into a general education class.  The psychological and psychiatric reports suggest that the student could thrive at a technical high school.  (*Id.* at 14.)

None of these documents was provided to the Court, Defendants, or opposing counsel before August 25, 2016, the day after the preliminary injunction hearing.[7]  The PPT/IEP documents make clear that Plaintiffs received at the February 18, 2016 meeting a copy of *Procedural Safeguards in Special Education*, which informs parents of children in need of special education of their rights under the IDEA.  (ECF No. 45 at 9, 14, 17, 20, 21.)  The student's mother also provided an affidavit stating that she received a copy on February 18, 2016 along with a copy of *Parental Notification* of *the Laws Relating to Restraint and Seclusion*.  (ECF No. 42 at 1.)  There was no evidence presented at the hearing and no evidence has been filed on the record that the Plaintiffs requested a PPT meeting with OWTHS in light of the student's new, IDEA-eligible status before the filing of this action.

### III.    Motion to Dismiss

#### A.  Standard

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence

---

[7] I therefore do not consider the documents in my indicative ruling on the Motion for Preliminary Injunction.

that it exists. . . .  In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider evidence outside the pleadings."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted).  A federal court has the obligation to dismiss a case for lack of subject matter jurisdiction whenever it appears from the pleadings or otherwise that jurisdiction is lacking.  *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 300 (2d Cir. 1994).

B.  The IDEA exhaustion requirement

The IDEA contains the following exhaustion requirement:

**(l) Rule of construction**:  Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

"The Second Circuit has long held that failure by plaintiffs to exhaust the IDEA's administrative remedies deprives the court of subject matter jurisdiction over their claims, including claims brought under the other federal statutes referred to in § 1415(l) if those claims seek relief available under the IDEA."  *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 502–03 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.,* 496 F. App'x 131 (2d Cir. 2012); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) ("Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."), *B.C. v. Mount Vernon City Sch. Dist.*, 2014 WL 4468082, at *3 (S.D.N.Y. Aug. 28, 2014) (*citing Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 488 (2d Cir.2002)) ("Relief is available under the IDEA if the IDEA

10

affords a remedy—in any form—for the events, condition, or consequences of which the [plaintiff] complains.").[8]  A claim under the ADA or Rehabilitation Act may also be made under the IDEA if it concerns "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."   20 U.S.C. § 1415(b)(6)(A).

The exhaustion requirement applies regardless of whether plaintiffs plead an IDEA claim and even if they renounce such a claim.  *See, e.g.*, *DiStiso v. Town of Wolcott,* 2006 WL 3355174 at *5 (D.Conn. Nov. 17, 2006) ("To the extent the complaint could be construed to allege claims under the IDEA, even though such claims are disavowed by Plaintiff or cloaked in legal theories distinct from IDEA, those claims are dismissed for lack of subject matter jurisdiction."); *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 299–300 (D. Conn. 2009) (requiring exhaustion even though "[t]he plaintiffs do not allege that they ever requested a due process hearing, or that IDEA's administrative remedy has been exhausted. Rather, they argue that no exhaustion is necessary because they are not seeking relief under IDEA, nor do they allege any violation of IDEA as a basis for their claims.").

Here, the Plaintiffs have tried to plead around the IDEA, for example, by alleging that the student "was not identified as a child with a disability" under the IDEA "[a]t all times relevant." (ECF No. 27 at ¶ 16.)  The evidence submitted at the hearing, and thereafter in response to the Court's orders, makes clear, however, that the IDEA's exhaustion requirement applies.  The student was classified as a child with a disability under the IDEA on July 12, 2016 – before this

---

[8] In *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203–04 (2d Cir. 2007) the Second Circuit suggested that it was uncertain about whether its earlier precedents holding that failure to exhaust administrative remedies is a jurisdictional defect remained good law in light of recent Supreme Court decisions.  While I could find no Second Circuit case addressing this uncertainty since *Coleman*, later cases, including those cited above, have continued to treat the failure to exhaust IDEA remedies as a jurisdictional defect.  Therefore, I will treat the exhaustion requirement as jurisdictional.

lawsuit was filed.  Plaintiffs have made no claim and presented no evidence that the classification was erroneous.  (ECF No. 45 at 19.)  Indeed, the Plaintiffs began seeking such a classification at least as early as February 2016 – and were initially unsuccessful in persuading officials at the Gilbert School that the student was "a child with a disability" within the meaning of the IDEA.[9] (Exhibit 4.)  Thus, when Plaintiffs filed this action on July 20, 2016, the relief they sought – requiring Defendants to admit the student to OWTHS – was available to them under the IDEA. Specifically, as Defendants pointed out at the August 24 hearing, Plaintiffs could have requested a PPT meeting with OWTHS after the student was classified as a child with a disability under the IDEA.  Plaintiffs could have brought the new psychological reports and IEP with them to the meeting and, using those materials, could have sought reconsideration of the Defendants' decision to deny admission to OWTHS.  If OWTHS continued to deny the student admission, Plaintiffs could have sought a due process hearing with a hearing officer.  *See* CONN. STATE DEP'T OF ED., BUREAU OF SPECIAL ED. PROCEDURAL SAFEGUARDS NOTICE REQUIRED UNDER IDEA PART B, 15-20 (July 1, 2011) *available at* http://www.sde.ct.gov/sde/lib/sde/PDF/DEPS/Special/Prosaf. pdf.  Instead of doing so, however, they filed this lawsuit.  Because the relief they seek here was available to Plaintiffs under the IDEA when this suit was filed, their claims are subject to the IDEA's exhaustion requirement.

---

[9] The evidence presented at the hearing supported the classification of the student as a child with a disability under the IDEA.  Under the IDEA, "[t]he term 'child with a disability' means a child with . . . other health impairments . . . and who, by reason thereof needs special education and related services."  20 U.S.C.A. § 1401.  "Other health impairment" is defined as "having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, that — (i) [i]s due to chronic or acute health problems . . . and (ii) [a]dversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9).  The student's mother testified at the hearing that the student was unable to attend school because of his anxiety.  The student's anxiety constitutes an "other health impairment" as defined by the IDEA and its regulations.  Due to his anxiety, the student did not attend school at all in his 8th grade year and was instead home schooled.

The IDEA allows Plaintiffs to challenge any decision "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  The Plaintiffs' complaint makes clear that they are challenging a decision relating to the evaluation and educational placement of the student. (*See* Sec. Am. Compl., ECF No. 27 at ¶ 23 (alleging that Defendants failed "to perform an individualized assessment of the student's needs."); *id.* at ¶ 27 (alleging that Plaintiffs "are entitled to an emergency preliminary injunction granting the student access to [OWTHS] . . . with appropriate accommodations and services.").)  Because the IDEA afforded a remedy for these claims – namely requesting a PPT with OWTHS – Plaintiffs were required to exhaust.  *B.C. v. Mount Vernon City Sch. Dist.*, 2014 WL 4468082, at *3 (S.D.N.Y. Aug. 28, 2014) ("Relief is available under the IDEA if the IDEA affords a remedy—in any form—for the events, condition, or consequences of which the [plaintiff] complains.").

This conclusion is consistent with the purposes of the IDEA.  As explained by the Second Circuit, "[t]he IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances."  *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002); *see also Gardner v. Uniondale Pub. Sch. Dist.*, 2008 WL 4682442, at *14 (E.D.N.Y. Oct. 21, 2008) ("Were we to condone such conduct, we would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children.").  Here, the dispute centers on the education of a disabled child and, specifically, on whether the needs associated with his disability can be accommodated at OWTHS. Defendants made a decision about the student's education in April, based on the only information

made available to them at that time.  Later, the parents persuaded the Gilbert School that the student was IDEA-eligible, based in part on new medical and psychological information that had never been provided to Defendants.  Instead of providing the new information to OWTHS and asking it to reconsider its denial of admission, Plaintiffs filed suit seeking an order overriding that denial. This is just the sort of premature resort to judicial remedies Congress sought to avoid in adopting the IDEA's exhaustion requirement.

Plaintiffs argue that they are not subject to the exhaustion requirement because the student was "not identified or classified as a child with a disability under the IDEA" at the time of the April 19th meeting with OWTHS.  (ECF No. 28 at 1.)  They are correct that the fact that the student was not identified as a child with a disability at the time the challenged decision was made distinguishes this case from most where IDEA exhaustion is required.  It is also possible that if Plaintiffs had brought this lawsuit in April, before the student was classified as a child with a disability under the IDEA, the claim may not have been subject to the IDEA exhaustion requirement, an issue I need not and do not address.[10]  But I find that because the complaint seeks relief that was available under the IDEA when the action was filed, the Court lacks subject matter jurisdiction.

### C. Emergency exception to the exhaustion requirement

Plaintiffs also argue that even if their claims are subject to the IDEA exhaustion requirement, an exception applies because the Plaintiffs seek relief that "is necessary and on an emergent basis."  (ECF No. 28 at 13.)  Plaintiffs cite *Coleman v. Newburgh Enlarged City Sch. Dist.*, which discussed an exception to the exhaustion requirement where "the failure to take

---

[10] Specifically, I do not address the question whether the IDEA's exhaustion requirement applies when school authorities erroneously conclude that a student is not a child with a disability under the IDEA, and the student does not challenge that conclusion.

immediate action will adversely affect a child's mental or physical health."  503 F.3d 198, 206 (2d. Cir. 2007).  The Court in *Coleman* noted that the emergency exception "is to be sparingly invoked," and found that the plaintiff in the case before it had failed to make the required showing. *Id.* (*citing Rose v. Yeaw*, 214 F.3d 206, 212 (1st Cir. 2000).  The Court also remarked that if the exception is read too broadly, it "would undermine the IDEA's statutory mandate for exhaustion." *Id.*

The emergency exception is not applicable here.  The Plaintiffs have made no showing that "the child will suffer serious and irreversible mental or physical damage" from the failure to grant the requested injunction.  *Id.*  Furthermore, applying the emergency exception in this case would encourage plaintiffs to sit on their IDEA claims and thereby circumvent administrative remedies, or as in this case, to interrupt the IDEA process by bringing suit before it is completed.  The Defendants made the decision that the Plaintiffs challenge on April 19, 2016.  Later, the Plaintiffs sought a PPT with the Gilbert School, and one was held in July, where the student was recognized as IDEA-eligible and an IEP was formulated.  Thereafter, on July 20, 2016, Plaintiffs filed this action without pursuing any further IDEA administrative remedies, such as a PPT with OWTHS, with full knowledge that the OWTHS school year was beginning on August 29, 2016.  *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir. 2002) ("Finally, we reiterate our holding that disabled-student plaintiffs . . . should not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages.").  Therefore, Defendant's Motion to Dismiss is GRANTED.

## IV.    Conclusions of Law with Respect to the Motion for Preliminary Injunction

Although I have found the IDEA exhaustion requirement applicable, and thus conclude the Court lacks jurisdiction, I nonetheless will indicate below how I would rule on the merits on the

Motion for Preliminary Injunction. I do so because I have been unable to find any Second Circuit cases addressing the application of the IDEA exhaustion requirement to a case in which plaintiffs challenge a decision made at a time when school authorities determined the student not to be IDEA-eligible. That determination was likely erroneous – although I make no finding to this effect. It was later reversed, and the evidence at the hearing did suggest that the student was a "child with a disability" under the IDEA. See note 9, *supra*. The exhaustion question here would have been particularly difficult if the Plaintiffs had filed suit in April.[11] Here, however, the Plaintiffs waited until after the student was determined to be IDEA-eligible to challenge in court a decision that preceded that determination. These circumstances appear to be novel in the Second Circuit, and so I indicate my view on the Motion for Preliminary Injunction in case the Court of Appeals disagrees with my resolution of the jurisdictional question.

A. Standard

"[D]istrict courts may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (citation and internal quotation marks omitted)). "[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.,* the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Asa*

---

[11] Some courts have required exhaustion even where there was no determination by school officials that the student was IDEA-eligible. *See Babicz v. Sch. Bd. of Broward Cty.,* 135 F.3d 1420, 1422 (11th Cir. 1998); *Weber v. Cranston Pub. Sch. Comm.*, 245 F. Supp. 2d 401, 408–09 (D.R.I. 2003); *Ruecker v. Sommer*, 567 F. Supp. 2d 1276, 1286 (D. Or. 2008).

*v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010). A district court has wide

discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison*

*Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

     B. <u>Plaintiffs have failed to show sufficiently serious questions going to the merits[12]</u>

         i. *Section 504 and ADA claims*

The Second Circuit uses the same standards in assessing claims under the ADA and the

Rehabilitation Act:

> Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified'" individuals with a disability. *McElwee v. Cnty. of Orange,* 700 F.3d 635, 640 (2d Cir.2012) (quoting 29 U.S.C. § 794(a)). Title II of the ADA likewise provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As the "standards adopted by the two statutes are nearly identical, we consider the merits of these claims together." *McElwee,* 700 F.3d at 640.
>
> To establish a violation under Section 504 or Title II, a plaintiff must demonstrate that "(1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."

*Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196–97 (2d Cir. 2014);

*see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511

F.3d 238 (2d Cir. 2004).

         ii. *The student is a qualified individual and Defendants are subject to the Rehabilitation Act*

---

[12] Defendants argue that Plaintiffs' claims are subject to the higher "likelihood of success on the merits" standard because the Plaintiffs allegedly seek an injunction to prevent government action taken pursuant to statutory authority, which is presumed to be in the public interest. (Defs. Proposed Findings of Fact and Conclusions of Law, ECF No. 37 at 6.) I need not reach the question because I have concluded that Plaintiffs have failed to show sufficiently serious questions going to the merits of the ADA and Section 504 claims to make them "fair ground for litigation."

The parties do not dispute that the student is a qualified individual with a disability and that the Defendants are subject to one of the Acts. They disagree only as to whether the student was denied admission to OWTHS because of his disability.

The student is a qualified handicapped individual under the implementing regulations of Section 504 of the Rehabilitation Act. A handicapped person "means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1). Since the Oliver Wolcott Technical High School is a vocational high school, the vocational definition for a qualified handicapped person stated in the implementing regulations applies. *See Cordeiro v. Driscoll*, 2007 WL 763907 at *5 (D. Mass. 2007). 34 C.F.R. § 104.3(l)(3) states that a qualified handicapped individual is "[w]ith respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity."

Neither party disputes that the student is a qualified handicapped individual under the definition. The student was identified as a handicapped person and received a 504 plan from the Gilbert School. (Exhibit 4.) He was diagnosed with anxiety and his disability limits his ability to attend school. Also, the student passed the first step in the application process to OWTHS, which involved an analysis of his grades only. (*See* Exhibit 2.) Therefore, he met the "academic and technical standards requisite to admission" and is a qualified handicapped person under the Act.

The parties also do not dispute that the Defendant is subject to one of the Acts. The Rehabilitation Act applies to "any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794. Defendant State of Connecticut Department of Education is a state agency that

receives federal funding.  The Connecticut Technical High School System, of which OWTHS is a part of, is a division of the Department of Education.

### iii. *Denial on the basis of a disability*

The only dispute is whether the student was denied admission on the basis of his disability. "In the education context, the ADA and the Rehabilitation Act require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an 'undue hardship' on the operation of its program." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.,* 804 F.3d 178, 186–87 (2d Cir. 2015) (internal citations omitted). Plaintiffs do not claim that OWTHS could have reasonably accommodated the student based on the 504 plan that was in place at the Gilbert School, which, as noted, provided for homebound instruction.  As Defendant Simoncelli testified at the hearing, OWTHS cannot accommodate a student who requires sustained homebound instruction – as the student did for the entirety of eighth grade – because the technical portions of the curriculum involve the use of heavy machinery, which obviously cannot be transported to a student's home.  OWTHS has never provided such an accommodation.  Thus, Defendants did not fail to make a reasonable accommodation for the student, because the accommodation that his 504 Plan required could not be made without dramatically altering OWTHS's curriculum.

At the hearing, the only claims pressed by the Plaintiffs were alleged procedural violations of Section 504 and the ADA.  The Plaintiffs claim that the Defendants failed to invite representatives of the Gilbert School to the 504 meeting on April 19, 2016, and that this was a procedural violation of the Rehabilitation Act.  Under 34 C.F.R. § 104.35(a), a "recipient that operates a public elementary or secondary education program or activity shall conduct an evaluation in accordance with the requirements of paragraph (b) of this section of any person who,

19

because of handicap, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant change in placement."   The same regulation requires that the recipient "ensure that the placement decision is made by a group of persons, including persons knowledgeable about the child."  34 C.F.R. § 104.35(c)

Plaintiffs argue that the alleged failure to involve any personnel from the Gilbert School violated the implementing regulations.  There are a few problems with this argument.  First, even if I were to find that Defendants failed to invite Gilbert School representatives to the 504 meeting and that that failure constituted a procedural violation, it would not be grounds for the requested injunction because there has been no proof of discrimination or a failure to provide a free and appropriate public education.  At most, the appropriate remedy would be to order OWTHS to convene another 504 meeting, this time with the Gilbert School involved.  Second, and more importantly, the facts demonstrate and I find that the Gilbert School *was* invited to the meeting.[13] (*See* Exhibits 21, 22.)  Therefore, there was no procedural violation.

The Plaintiffs also claim that the Defendants failed to perform an individualized assessment, which was required under both the Rehabilitation Act and the ADA.  But the evidence shows that the 504 team did conduct an individualized assessment based on the information available to them at the time.  The team considered the student's medical records, his records from the Gilbert School, and his 504 plan.  The team also asked for additional information and new psychological reports, which they did not receive.  At the time they made the decision to deny the student admission to OWTHS, the student's 504 plan and medical records stated that he could not

---

[13] The Plaintiffs argue that the Gilbert School was invited only to the April 4 meeting, and was not informed when it was rescheduled to April 19.  But OWTHS never heard from the Gilbert School representatives after inviting them to the April 4 meeting.  The failure to inform them of the date change was not unreasonable when they had expressed no interest in attending the April 4 meeting.

attend school because of his anxiety and that he required homebound instruction.  The 504 plan was created in September of 2015 and the last doctor's note was from December 2015.  It was not unreasonable for the 504 team to rely on documents that were less than a year old, especially given that the Defendants requested any updated psychological or medical reports before the meeting, and none were provided.  The Defendants made the determination that OWTHS was not an appropriate placement based on the information available to them at the time, which is all that they were required to do.

It may well be that the student could succeed at Oliver Wolcott Technical High School. But Plaintiffs have failed to show sufficiently serious questions going to the merits of whether OWTHS discriminated against the student because of his anxiety or failed to afford the procedural protections required by Section 504 and the ADA.[14]

### V.      Conclusion

While I am sympathetic to the Plaintiffs' plight, they have failed to exhaust their administrative remedies under the IDEA and thus the Court does not have jurisdiction.  But even if the Court did have jurisdiction, I would find that Plaintiffs have not shown sufficiently serious questions going to the merits of their Section 504 and ADA claims.  Thus, Defendants' Motion to Dismiss is GRANTED, and Plaintiffs' Motion for Preliminary Injunction is DENIED as moot. The clerk is instructed to close this case.

_____/s/_____
Michael P. Shea
United States District Judge

October 11, 2016

---

[14] Since Plaintiffs have failed to show sufficiently serious questions going to the merits, I decline to address whether the Plaintiffs have shown they will suffer irreparable harm.